670 N.W.2d 67 (2003)
2003 SD 113
The PEOPLE of the State of South Dakota, In the Interest of D.B., III. A Minor Child, and
Concerning D.C., Respondent and D.B., II, Interested Party.
No. 22707.
Supreme Court of South Dakota.
Considered on Briefs September 4, 2003.
Decided September 17, 2003.
*68 Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee, State of South Dakota.
Gustav K. Johnson, Rapid City, South Dakota, Attorney for appellant D.C.
PER CURIAM.
[¶ 1.] D.C. (the mother) appeals the termination of her parental rights over her child, D.B, III. We examine two federal statutes applicable to this proceeding: the Indian Child Welfare Act (ICWA) and the Adoption and Safe Families Act (ASFA). Because we conclude that the trial court adhered to the requirements of these statutes, we affirm.

BACKGROUND
[¶ 2.] The mother left her two children, ages 2 years and 6 months, with a grandmother while she traveled to Denver and then Las Vegas. One child was left in March 2001 and the other in April 2001. On June 26, 2001, the grandmother contacted the Department of Social Services (DSS) and reported that she could no longer care for the children due to health and financial concerns. The grandmother was unsure of the mother's whereabouts. The children were taken into protective custody. A petition alleging abuse and neglect was filed against the mother on the basis that she had either abandoned the children or failed to provide necessary care for them, or both. The mother could not be located and so she was served by publication. When she failed to appear, the petition was deemed admitted by default and the children were adjudicated abused and neglected.
[¶ 3.] The mother contacted DSS on August 20, 2001, indicating that she had been out of state looking for work. DSS arranged for her to meet with the social worker in charge of the matter and arranged for her attendance at parenting classes. She failed to attend the first review hearing, failed to attend two scheduled meetings with the caseworker, and did not attend the parenting classes. The mother was then incarcerated for failing to pay child support and made her first appearance in this matter on November 16, 2001, the date set for the original dispositional hearing. The trial court continued that hearing to allow the mother to prepare and consult with her attorney. The court gave her specific instructions on what tasks she needed to complete before the next hearing. At that time, the mother was pregnant with D.B. III, the child at issue here. In light of the mother's pregnancy, a second petition was filed alleging that D.B. III was abused and neglected. *69 The court entered a protection order prohibiting the mother from using alcohol or drugs during her pregnancy. D.B. III was born on April 23, 2002. He is a Native American child.
[¶ 4.] The mother failed to comply with the court's instructions. She failed to sign the family service agreement, attend parenting classes, complete the housing application, obtain employment, or complete a drug and alcohol evaluation. Another review hearing was ordered and the mother was again admonished by the court to complete these tasks.
[¶ 5.] The mother eventually received an alcohol and drug evaluation, which indicated cannabis and alcohol dependence. Dr. Mindy Hedlund conducted a psychological assessment confirming the mother's dependence on cannabis and alcohol. She also diagnosed the mother with a personality disorder. Dr. Hedlund questioned the mother's ability to use good judgment in parenting and indicated that the mother would not be able to provide ongoing consistent care for her children without intensive supervision. Dr. Hedlund expressed concern that the mother would not develop an attachment to the unborn child. She indicated that the mother was "quite emotionally immature" and "likely to make poor choices."
[¶ 6.] It was recommended that the mother complete intensive inpatient counseling in the Full Circle program to address her chemical dependence. She eventually entered this program but discontinued her treatment before being discharged. Later, on May 15, 2002, the mother voluntarily terminated her parental rights to the two older children who were the subject of the first petition. She also admitted the allegations in the second petition, namely that by her refusal to complete inpatient alcohol and drug treatment she neglected the needs of her child. D.B. III was adjudicated abused and neglected based on the acts and omissions of the mother.[1]
[¶ 7.] DSS developed a client case plan in May 2002. The objectives for the mother included maintaining sobriety; entering and completing a treatment program; following all aftercare recommendations; obtaining and maintaining employment; following through with individual counseling recommendations; attending therapy; avoidance of relapse; attendance at AA twice a week; and completing parenting classes. The mother eventually found employment and completed the parenting classes. However, she failed to follow through with aftercare for substance abuse, comply with the relapse prevention program, and consistently attend AA. She also failed to obtain individual counseling for her significant mental health issues.
[¶ 8.] During the latter part of these proceedings, the child was placed with his biological father. The mother was approved for limited unsupervised contact with the child for the purpose of taking him to and from daycare. A specific plan was created by DSS and discussed with the mother. On November 11, 2002, the first day of the plan, the mother was unable to leave the child at daycare and rather than contact DSS, as required, she placed him in the care of another individual with a history of child protection issues. Then she lied to the caseworker about the whereabouts of the child. An emergency hearing was held and the trial court found that the mother's act confirmed the reservations expressed by Dr. Hedlund that the mother would not be able to exercise proper judgment concerning the care of the *70 child. The court determined that the provisions of ASFA applied, thereby eliminating the need for reasonable efforts to be provided toward reunification.
[¶ 9.] Following the dispositional hearing, the court found that termination of the mother's parental rights was the least restrictive alternative commensurate with the best interests of the child and that continued custody with the mother would result in serious emotional or physical damage to the child beyond a reasonable doubt. Despite the ASFA order eliminating the reasonable efforts requirement, the trial court also found that DSS had made reasonable and active efforts to prevent the breakup of this Indian family, but that those efforts were unsuccessful. Now the mother appeals, contending that the circuit court failed to follow the provision of ASFA and ICWA.

ANALYSIS

1. Does ASFA apply?
[¶ 10.] ASFA, enacted in 1997, represents a departure from the former Adoption Assistance and Child Welfare Act of 1980. It establishes a child protection system that subordinates parental rights to the paramount concern for the health and safety of the child when making a decision on whether it is in the child's best interests to preserve the family unit. ASFA, PL 105-89, 1997 HR 867; see also New Jersey v. A.R.G., 361 N.J.Super. 46, 824 A.2d 213, 233 (2003). ASFA is the congressional response to concerns that the preexisting law acted as a barrier to the adoption of abused and neglected children. H.R.Rep. No. 105-77 at 8 (1997). Under ASFA, the child protection system is not required to expend its limited resources attempting to reunify children with abusive parents if certain circumstances exist. 42 USCA § 671(a)(15). Thus, the act allows states to move toward termination of parental rights more efficiently under certain circumstances. H.R. Rep. No 105-77 at 8 (1997). "In weighing the balance between the rights of children and the rights of parents when considering reunification services, the balancing formula should tip on the side of protecting children, and not on the side of protecting the rights of parents." A.R.G., 824 A.2d at 233.
[¶ 11.] To this end, 42 USCA § 671(a)(15)(d) provides:
(D) reasonable efforts of the type described in subparagraph (B) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that
(i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse);
(ii) the parent has
(I) committed murder (which would have been an offense under section 1111(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;
(II) committed voluntary manslaughter (which would have been an offense under section 1112(a) of Title 18, if the offense had occurred in the special maritime or territorial jurisdiction of the United States) of another child of the parent;
(III) aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or

*71 (IV) committed a felony assault that results in serious bodily injury to the child or another child of the parent; or
(iii) the parental rights of the parent to a sibling have been terminated involuntarily.
As previously mentioned, the trial court found that ASFA applied to this case and that further reasonable efforts by DSS toward reunification were not required. However, the record does not reveal the exception to the reasonable efforts requirement the trial court relied on in making its determination. The parties speculate that the two potential exceptions to the reasonable efforts requirement the trial court relied on were that (1) "the parental rights of the parent to a sibling have been terminated involuntarily" or that (2) "aggravated circumstances" exist to justify discontinuation of reasonable efforts. See 42 USCA § 671(a)(15)(d)(iv)(iii); 42 USCA § 671(a)(15)(d)(i).
[¶ 12.] As the mother points out, the exception to the reasonable efforts requirement based on a prior termination is not applicable on these facts because the prior termination was voluntary. Therefore, our inquiry must be whether the record demonstrates "aggravating circumstances" as specified in 42 USCA § 671(a)(15)(d)(i) to justify application of ASFA to eliminate the reasonable efforts requirement.
[¶ 13.] "[T]o bypass the requirement for reasonable efforts of reunification, `aggravating circumstances' must be found to exist. The difficult issue is identifying aggravating circumstances." A.R.G., 824 A.2d at 233. As set forth in 42 USCA § 671, the guiding factor in making this determination is the applicable state law addressing aggravating circumstances. See also H.R. Rep 105-77 (1997). In that regard, SDCL 26-8A-21.1 provides:
Nothing in 26-8A-21 requires reunification of a child with a parent who:
(1) Committed a crime defined in 22-16-4, 22-16-7, 22-16-9, 22-16-15, 22-16-20, 22-22-1, 22-22-19.1, 22-22-22, 26-10-1, or subdivision 22-19-1(5), or committed conduct described by any of those statutes that violated the law or ordinance of another jurisdiction having elements similar to an offense described by any of those statutes;
(2) Committed a crime defined in 22-18-1.1 against the child or another child of such parent, or committed conduct described by that section that violated the law or ordinance of another jurisdiction having elements similar to the offense described by that section;
(3) Has been determined by a court by clear and convincing evidence to have subjected the child or another child to torture, sexual abuse, abandonment for at least six months, chronic physical, mental, or emotional injury, or chronic neglect if the neglect was a serious threat to the safety of the child or another child;
(4) Is incarcerated and is unavailable to care for the child during a significant period of the child's minority, considering the child's age and the child's need for care by an adult;
(5) Has had parental rights to another child involuntarily terminated by a prior legal proceeding;
(6) Has a documented history of abuse and neglect associated with chronic alcohol or drug abuse;

(7) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, and the child or another child has been removed from the parent's custody because the removed child was adjudicated abused and neglected *72 by a court on at least one previous occasion;

(8) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, the child has been removed from the parent's custody on two separate occasions, and the Department of Social Services offered or provided family services on each of the two separate occasions the child was removed; or
(9) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or risk of harm resulting from a crime, act, or omission as specified in subdivision (1), (2), or (3) of this section.
SDCL 26-8A-21.1. (emphasis added).
[¶ 14.] The State asserts that the mother has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, and the child or another child has been removed from the parent's custody because the removed child was adjudicated abused and neglected by a court on at least one previous occasion. SDCL 26-8A-21.1 (7). On these facts, SDCL 26-8A-21.1 (7) is applicable and supports the trial courts determination. The record demonstrates that the mother has exposed the child to, and demonstrated an inability to protect the child from, substantial harm or the risk of substantial harm. In addition, the two other children, though parental rights were voluntarily terminated, were previously adjudicated abused and neglected on at least one previous occasion and removed from the mothers care. Therefore, under our state law, aggravating circumstances justifying the termination of reasonable efforts were present in this case.
[¶ 15.] When making an ASFA determination, it should be noted that the existence of aggravating circumstances does not suggest that services are not to be provided at all. Here, despite the entry of the ASFA order, DSS had provided services to the mother. The ICWA expert testified, and the trial court determined, that active and reasonable efforts to further reunification were provided but were unsuccessful. The reasonable efforts bypass provision found in SDCL 26-8A-21.1 provides the trial court with discretion to identify the most egregious cases early in the process and dispense with futile efforts toward reunification.
[¶ 16.] Although the mother asserts error below, it is significant that the mother was provided an opportunity to contest the application of ASFA and the trial courts determination that no further efforts were required, but she did not object, present contradictory evidence, or in any way attempt to contest the ASFA finding. On this record, the trial court did not err in determining that no further efforts were required.

2. Was termination the least restrictive alternative?
[¶ 17.] The mother argues that the record does not establish that termination was the least restrictive alternative, but only that she had instances of "questionable judgment and commitment to [the] child." A review of the record reveals that the mother's actions and inactions during the seventeen months this matter was pending support the trial court's decision. She has not been able to demonstrate that she can care for the child on a consistent basis, exercise appropriate parental judgment, and provide a safe and stable home environment.
[¶ 18.] "We must be mindful of the fact that the needs of the child must take priority over the wishes of the parent. To mandatorily impose a less restrictive *73 alternative in each instance as a prerequisite for termination would thwart this underlying principle in cases where immediate termination is the only viable means to insure that the best interests of the child are protected." Matter of B.E., 287 N.W.2d 91, 95 (S.D.1979). The mother's promises to conform to the standard of care for her children do not carry as much weight as her past actions of not properly caring for her children. In re AS, 2000 SD 94, ¶ 21, 614 N.W.2d 383, 387. Applying these principles, the trial court did not err in determining that continued custody with the mother would likely result in serious emotional or physical damage to the child and there was no less restrictive alternative in the best interests of the child.

3. Were there reasonable efforts for reunification?
[¶ 19.] ICWA requires the State to show that it made efforts to prevent the breakup of the Indian family:
Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
25 USC § 1912(d). Despite the fact that the trial court ordered that further reasonable efforts were not required under ASFA, it also found that reasonable and active efforts had been provided.[2] Because the trial court did in fact find that reasonable and active efforts were made, we proceed to examine that finding. Our review of the record demonstrates that this finding is not clearly erroneous. DSS provided case management services to the family, provided weekly visits until custody was returned to the father, assisted the mother in entering inpatient treatment, provided transportation, funded the purchase of a stroller and crib for the child, attempted to arrange counseling, obtained funding for initial day care fees, and requested funding for housing application fees. For her part, the mother failed to follow through, missed appointments, and did not fully use the remedial services offered to her.
[¶ 20.] Affirmed.
[¶ 21.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.
NOTES
[1] The mother refused to continue with treatment at Full Circle knowing that this decision would preclude the placement of D.B. III in her care.
[2] We recognize that that there may be a conflict between the requirements of ICWA and AFSA on which act takes precedence in certain instances. "Although there is a provision in AFSA that recognizes that it does not intend to supersede the various provisions of the Indian Child Welfare Act, AFSA is very unclear on how to reconcile its provisions and those provisions in ICWA that seem to conflict." B.J. Jones, IN THEIR NATIVE LANDS: THE LEGAL STATUS OF AMERICAN INDIAN CHILDREN IN NORTH DAKOTA, 75 ND L Rev 241, 255 (1999); see also AFSA, 42 USC § 674(d)(4) (Supp 1997). However, in this case, the issue is not before us because the requirements of both acts were followed.