In the Matter of the ESTATE of Ellen H. WASHBURN, deceased.

No. 20001.

Supreme Court of South Dakota.

Considered on Briefs Dec. 2, 1997.

Decided Feb. 11, 1998.

James W. Olson of Wilson, Olson & Nash, P.C., Rapid City, for appellants Alan Washburn & Warvec Inc.

No appearance by appellee.

GILBERTSON, Justice.

[¶ 1.]On July 26, 1996, Richard S. Washburn (Richard) assigned his one-half interest in the estate of his mother to Warvec Corporation (Warvec), a South Dakota corporation formed by his parents, in which his brother, Alan V. Washburn (Alan), was the sole officer and director as well as the principal shareholder. Although the circuit court originally recognized the assignment, it subsequently reversed its decision and ordered that Richard's fifty-percent interest be held by the clerk of courts for Richard to receive upon request. Alan appeals individually and on behalf of Warvec.[1] We reverse and remand with instructions to amend the Decree of Final Distribution so that Warvec receives the fifty-percent interest Richard had transferred in July, 1996.

### FACTS AND PROCEDURE

[¶ 2.]The Last Will and Testament (Will) of Ellen H. Washburn, which left her estate equally to her two sons, Alan and Richard, was admitted to probate on May 4, 1992. There were no conditions or limitations relating to the alienability of either sons' interests in the estate. The Will named Richard as the executor of the estate. However, after Richard abandoned his duties and all communications with the circuit court on April 28, 1995, he was removed and ordered to account. Marshall Young (Young) was thereafter appointed as successor administrator to the estate.

[¶ 3.]Apparently, there existed a considerable amount of friction between Richard and Alan during the probate of their mother's estate as to the handling of Warvec and certain expenditures made by Alan during his executorship.[2] On July 26, 1996, Richard signed a bill of sale unconditionally transferring his one-half interest, including an executed stock certificate for 200 shares of Warvec, held by the estate, to Warvec for the sum of $18.00. As a result of this transfer, Richard became the principal shareholder in Warvec.[3] A letter from Richard to Alan accompanied the bill of sale and clearly stated Richard's intent to transfer his interest to Warvec.

[¶ 4.]Through a letter dated August 14, 1996, Alan's counsel informed the successor administrator, Young, of the transfer. On December 11, 1996, Alan filed a petition with the circuit court which gave notice of Richard's transfer to Warvec. Alan stated his belief that Richard's motive in making the transfer was to "cope with the claims of Warvec against Richard" which arose out of

---

1.  Only Alan and Warvec have filed briefs in this matter. Counsel for the successor administrator, Marshall Young, has advised this Court that they did not file a brief because all of the estate assets have been distributed and that this "dispute ... does not concern [Marshall Young] or his activities, but instead is an issue between Richard Washburn and Warvec Corporation." Richard did not appear in person nor file a brief.

2.  After displaying a great deal of patience with the brothers, the circuit court became frustrated:
    I think that [Richard] would do everything he could to make everybody miserable, from brother on down to everyone associated with

the case. I don't think he should get away with that. From the time this action started, he has been nothing but obstreperous. At every turn he's tried to delay.... The two brothers are never going to get along. I was delusional to think that we might resolve some family differences. Instead they have another forum on which they could heighten their public display of dislike for each other.

3.  Pursuant to an Order of Declaration of Trust in these proceedings filed July 1, 1996, fifty shares of stock were held by Pioneer Bank and Trust.

Richard's expenditures made while executor. Richard had still not delivered an account at this time. Since Alan was the sole officer and director and effectively the sole shareholder in Warvec, he informed the circuit court that a final account of Richard's expenditures as executor would have little effect or would be "essentially moot." The circuit court agreed, after holding a hearing on the petition on December 23, 1996. The circuit court also concluded that Richard was in contempt for failing to account and that the bill of sale from Richard to Warvec assigned and transferred all of Richard's interest in his mother's estate, including the fifty shares of Warvec stock held in trust at Pioneer Bank and Trust.

[¶ 5.]Young subsequently proposed that all of the estate's assets remaining under his control, minus expenses, be distributed by giving Alan fifty percent and Warvec fifty percent. This had been the apparent course of conduct among all of the parties interested in the estate's assets, until a letter was received from Richard by the circuit court and Young. Attached to this January 7, 1997, letter was what purported to be an accounting of Richard's expenses in connection with his prior duties as executor. Richard claimed $12,365 in estate expenses. He stated he had personally paid $7,050 and personally "absorbed" the remaining $5,315 in expenses. This letter was filed on January 17, 1997. Alan and Warvec contend they did not receive a copy or become aware of this letter until the January 27, 1997, hearing upon the Final Account and Report and Petition for Final Distribution. Neither Alan nor Warvec had been given notice that *any* of the estate funds were to be set aside for Richard until the January 27, 1997, hearing when

Young's counsel proposed that the fifty percent assigned to Warvec by Richard be deposited with the clerk of courts pending a determination as to who was entitled to the fifty-percent share. The circuit court agreed and modified its prior order so that Richard's share, totaling $11,659.14, was to be held by the clerk of courts for Richard to receive upon request.[4] For reasons not apparent in the record, the circuit court set aside that part of its previous order in which it recognized the bill of sale from Richard to Warvec.[5]

[¶ 6.]Alan and Warvec appeal, raising the following issues for our review:

1. Whether the bill of sale effectively transferred Richard's interest in the estate to Warvec Corporation?

2. Whether the circuit court may order the taking of property of a party without any notice of hearing or a "meaningful" hearing?

## ANALYSIS

[¶ 7.]1. **Whether the bill of sale effectively transferred Richard's interest in the estate to Warvec Corporation?**

[¶ 8.]This Court has been called upon to review the legal effect of the bill of sale in light of the evidence before the circuit court. When this Court reviews the circuit court's interpretation of the legal effect of the evidence presented, "we are presented with a mixed question of fact and law which is fully reviewable." *Fiegen v. North Star, Ltd.*, 467 N.W.2d 748, 750 (S.D.1991) (citing *Permann v. South Dakota Dep't. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 116 (S.D.1987)).

---

4. The circuit court believed that the letter was the impetus for Marshall Young and his counsel's sudden change of position by stating, "Mr. Wilson and Marshall Young have received correspondence, which now attempts to upset the apple cart."

5. Rather than adhere to its prior order of December 23, 1996, determining that the bill of sale was valid, the circuit court now left it up to Richard to determine whether or not the bill of sale was binding.

I guess if [Richard] wants—I'm not setting [the bill of sale] entirely aside. He calls it a bill of sale and he wants it to do what he says it does. In the event that he reneges, which he's capable of doing in my mind, we set aside what he would have done with that bill of sale in the clerk's office. He wants his money, he comes forward and gets it. He can't then claim what he wanted to have happen didn't happen[.] The circuit court's Decree of Final Distribution of January 29, 1997, does not contain any of the ambiguity apparent in the hearing transcript. It explicitly states that Richard is entitled to receive his fifty-percent interest of $11,659.14 upon his request.

[¶ 9.]The bill of sale [6] signed by Richard on July 26, 1996, stated in part:

> BE IT KNOWN, for good consideration, and in payment of the sum of $18.00, the receipt and sufficiency of which is acknowledged, ... Richard S. Washburn ... hereby sells and transfers to Warvec [Corp.] and the Buyer's successors and assigns forever the following described chattels and person [sic] property:
>
>> One half (1/2) interest in the remaining net portion of the estate of Ellen H. Washburn for which he is beneficiary.
>
> . . .
>
> The transfer of interests is effective February 1, 1996 or whatever date is the beginning of the new taxable year for the estate.

■ [¶ 10.]A valid assignment may be the product of a gift or a contract. *Cooke v. Belzer,* 413 N.W.2d 623, 626 (Minn.Ct.App. 1987). It is undisputed that the assignment at issue, whether valid or not, was produced through a contract. Other than Richard's proposed effective date,[7] the validity of this assignment was never questioned by any of the parties until the January 27, 1997, hearing. Prior to that time, all of the parties and the circuit court had treated the bill of sale as an effective assignment transferring Richard's interest in his mother's estate to Warvec Corp.[8]

■ [¶ 11.]It is well established that "[a] beneficiary may alienate a property right

which he has received by will in accordance with the general rules which govern sales and conveyances of such interests in such property, ... if there is no valid restriction in the will on such alienation." 6 Bowe–Parker, *Page on Wills* § 59.19 (1962) (collecting cases).[9] After his mother's death and prior to the July 1996 assignment, Richard had a vested interest, not a mere expectancy, in fifty percent of his mother's estate. This Court has held that "[u]pon the death of the testator the devisee becomes vested with the same right to, and interest in, the devised property that was possessed by the testator, at the time of his death[.]" *Hicks v. Skie,* 67 S.D. 115, 116, 289 N.W. 507, 508 (1939); *cf. Avon State Bank v. Commercial & Sav. Bank,* 49 S.D. 575, 207 N.W. 654 (1926) (son of a living father has no interest in father's lands and may not execute a mortgage on mere expectancy). Richard's mother's Will contained no restrictions on alienation which would invalidate his assignment to Warvec.[10] In addition, a valid assignment is binding upon the executor or subsequent administrator of the estate. *See* 23 AmJur2d *Descent and Distribution* § 168 (1983) (citing *Cooper v. Hayward,* 71 Minn. 374, 74 N.W. 152, 153 (1898)).

■ [¶ 12.]The bill of sale was unconditional and did not contain any restrictions prohibiting Warvec from immediately receiving all of Richard's interest in his mother's estate. Although the bill of sale did not indicate Richard's motives,[11] it did clearly

---

**6.** *See* SDCL 43–4–6 which provides in part that "[a] transfer [of property] in writing is called a grant, or conveyance, or a bill of sale."

**7.** The circuit court correctly concluded that the actual effective date of the transfer was July 26, 1996, the presumed delivery date. *See* SDCL 43–4–7.

**8.** The circuit court specifically found that the bill of sale effectively transferred all of Richard's interest to Warvec. Subsequently, Young's Final Account and Report and Petition for Final Distribution proposed that fifty percent each be distributed to Alan and Warvec.

**9.** *See also* 6 AmJur2d *Assignments* § 24 (1963) (a vested interest in a decedent's estate is generally assignable); *Lewis v. Green,* 389 So.2d 235 (Fla. Dist.Ct.App.1980) (upholding assignment by one beneficiary to other beneficiaries under testa-

mentary trust), *cert. denied,* 397 So.2d 778 (Fla. 1981).

**10.** A corporation has the power to "purchase, take, receive, lease or otherwise acquire, own, hold, improve, use and otherwise deal in and with, real or personal property, or any interest therein, wherever situated[.]" SDCL 47–2–58(4).

**11.** Even if the assignment were to be characterized as a family agreement to modify the ordinary disposition of the decedent's estate, this Court would enforce it under these facts. Family agreements are subject to the rules of contract and could have been rescinded if consent was improperly obtained. *In re Estate of Krause,* 444 N.W.2d 4, 7 (S.D.1989). Family agreements or compromises for the distribution of property are looked upon with favor and "are binding and enforceable according to their terms." *Id.* (citation omitted).

indicate Richard's intent that his interest be transferred.[12] Under SDCL 43–4–16, the circuit court was required to interpret the bill of sale in favor of the grantee, Alan. Therefore, as of July 26, 1997, Warvec effectively received Richard's net interest in his mother's estate.

[¶ 13.]Counsel for Young did not demonstrate when submitting the motion, and the record is barren of, any facts or conclusions which would provide an adequate basis for the circuit court to reverse its prior order in which Richard's fifty percent was to be distributed to Warvec. *See* SDCL 15–6–52(a) (In all actions tried upon the facts without a jury.... the court shall unless waived as provided in § 15–6–52(b) find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to § 15–6–58[.] ).

[¶ 14.]Alan and Warvec have hypothesized that the only basis, albeit improper, for the circuit court's decision was Richard's January 7, 1997, *ex parte* letter to the circuit court and Young, in which Richard attempted to provide a final accounting for his expenditures as executor years before. The letter stated Richard's belief that

> There is a strong probability that the contract between [Richard and Alan] was never valid or, at the very least, subject to renegotiation.... If the original contract is valid, the changed conditions represent a material, unilateral redefinition of the contract which merits additional compensation for [Richard] to reflect the actual conditions which were coerced on [Richard].

We need not address this letter in great detail, as this Court has decided that Richard's bill of sale was an effective unconditional transfer to Warvec. Since Richard's letter purporting to be an accounting was not sworn upon or filed with the circuit court, the letter falls well short of qualifying as an accounting.[13] Therefore, the letter could not provide the basis to undo what was previously done through the assignment. Accordingly, we find no legal or factual reason which would uphold the circuit court's decision to ignore Richard's completed act of transferring interest to Warvec.

[¶ 15.]**2. Whether the circuit court may order the taking of property of a party without any notice of hearing or a meaningful hearing.**

■ [¶ 16.]Since we have decided under Issue 1 that Richard's assignment was effective to vest Richard's property rights unto Warvec, we now address whether the circuit court violated Warvec's procedural due process rights as guaranteed by the South Dakota Constitution, art. VI, § 2, and the Fifth and Fourteenth Amendments to the United States Constitution.

[¶ 17.]Alan and Warvec contend that prior to the January 27, 1997, hearing they did not receive *any* notice that counsel for the successor administrator or the circuit court were considering setting aside any portion of the estate for Richard. A thorough review of the record supports this assertion. Prior to this hearing, both the successor administrator and the circuit court had maintained that Richard had extinguished his interest in his mother's estate through the July 1996 bill of sale.

■ [¶ 18.]Fundamental is the notion that procedural due process requires that before a person is deprived of a property right that person is entitled to notice and a meaningful

Richard's letter did not challenge the consideration received for his transfer to Warvec. Furthermore, wholly unsupported is Richard's contention in the letter that "changed conditions represent a material, unilateral redefinition of the contract which merits additional compensation for [Richard] to reflect the actual conditions which were coerced on [Richard]."

12. "A transfer vests in the transferee all the actual title to the thing transferred, which the transferor then has, unless a different intention is expressed or is necessarily implied." SDCL 43–4–17.

13. *See* SDCL 30–25–11 (repealed 1995 S.D.Sess.L. ch. 167, § 174) (required executor to file an account under oath). Furthermore, the letter contained some expenses incurred after Richard was removed as executor and did not fully account for all of the expenses.

SDCL 29A–8–101 provides in part that, "[the South Dakota Uniform Probate] code applies to decedents dying on or after July 1, 1995, to their estates, and to the identification and rights of their successors[.]" Therefore, SDCL Title 29 and 30 governed the probate of the estate.

opportunity to be heard. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 569 (1972); *Northwest South Dakota Prod. Credit Ass'n v. Dale,* 361 N.W.2d 275 (S.D.1985). Neither Alan nor Warvec were given notice that any assets were to be set aside for Richard or an opportunity to contest Richard's so-called accounting [14] at the final January 27, 1997, hearing. *See* SDCL 30–25–25 (repealed 1981 S.D.Sess.L. ch. 168, § 3; 1995 S.D.Sess.L. ch. 167, § 174) ("when an account is rendered by an executor or administrator ... any person interested in the estate ... may contest [the account]").

■ [¶ 19.]This Court recognizes that the sufficiency of the notice and opportunity required under due process is flexible and "requires only such procedural protections as the particular situation demands." *In re Certif. of Questions (Knowles v. United States),* 1996 SD 10, ¶ 79, 544 N.W.2d 183, 201 (citing *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976)). Here, however, Alan and Warvec were denied notice and a meaningful opportunity to be heard before the circuit court decided Richard was entitled to the fifty percent of the estate originally transferred to Warvec.

[¶ 20.]Reversed and remanded with instructions to amend the Decree of Final Distribution so that Warvec receives the fifty-percent interest Richard had transferred in July 1996.

[¶ 21.]MILLER, C.J., and SABERS, AMUNDSON, and KONENKAMP, JJ., concur.

---

14. Even if the letter had been a properly sworn affidavit, we would have questioned the circuit court's discretion in relying upon it as a basis for granting the motion without conducting some sort of further inquiry to ensure that neither Alan nor Warvec were prejudiced. As this Court stated in *Estate of Eberle,* 505 N.W.2d 767, 771 (S.D.1993):

> Affidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them. *Bloom v. Bloom,* 498 N.W.2d 213 (S.D.1993). Nevertheless, the ultimate determination of whether issues of fact should be resolved by affidavit is left in the sound discretion of the trial court. SDCL 15–6–43(e) provides "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."