2004 SD 7

**In the Matter of I.H., Abused or Neglected Child.**

**No. 22896.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 2004.

Decided Jan. 21, 2004.

Lawrence E. Long, Attorney General, David W. Siebrasse, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee, State of South Dakota.

Beverly J. Katz, Huron, South Dakota, Attorney for appellant, Mother.

PER CURIAM.

[¶ 1.] L.W. (mother) appeals the termination of her parental rights over her nine-year-old daughter, I.H. We affirm.

FACTS

[¶ 2.] Mother is a thirty-three-year-old resident of Huron. She has mental impairments and has been diagnosed with a borderline personality disorder and borderline intellectual functioning that causes great volatility in her mood states. Mother has a history of alcohol and substance abuse, has received extensive mental health treatment and has been involved with various services since her adolescence. She is twice divorced and has had four children of which I.H. is the youngest. Mother's oldest child was put up for adoption in 1988 and custody of her other two children was given to their father because of her incarceration at one point in time.

[¶ 3.] I.H. was born in 1994. Over the following seven years, the Department of Social Services (DSS) received twenty-four

referrals concerning mother's care of I.H.[1] Out of these referrals, there were three voluntary removals of the child and two involuntary removals. Mother was twice adjudicated for abuse and neglect and at least one of the adjudications involved mother's physical abuse of the child.

[¶ 4.] DSS began providing mother with direct services in 1996. The services involved a social worker going into the home to improve mother's functioning and interaction with I.H. These services were provided on a continual basis from 1996 through 2000. In addition, mother was provided services by various community based agencies including community counseling through the Bradfield Leary Center in Huron and instruction in independent living through the Huron Center for Independence. Independent living instruction included assistance with mother's work search skills and development of her parenting and living skills such as grocery shopping and menu planning. These community based services continued up through the time of disposition and ranged from ten to twenty hours per week with various people in different agencies. There were also weekly staff meetings among the agencies involved to coordinate the services being provided to mother.

[¶ 5.] Although DSS ceased providing direct services to mother in 2000, the community based services continued.[2] There was testimony that any additional services DSS could have provided to mother would have been repetitive and that sufficient services were being provided to constitute "overkill." Another service provider involved with mother's case testified that mother received the most services that she had ever heard of and that it still was "not enough."

[¶ 6.] After informing a DSS worker about a touching incident involving mother's ex-husband, I.H. was finally removed from mother's care and taken into emergency custody by DSS on October 17, 2002. I.H. told the worker that the ex-husband had come to mother's house while drunk, spent the night sleeping in bed with mother and I.H. and, during that time, touched her inappropriately in her private area. Specifically, I.H. alleged the ex-husband hurt her with his thumb in her groin area and touched her bottom with his hand. Mother later confirmed these facts, admitting that she knew her ex-husband had touched I.H., that she was in the room when it happened, that she knew the ex-husband touched the child's groin and that her response was to tell him to "knock if off or he would have to leave." When the ex-husband ignored her and touched I.H. with his hand on her "butt," mother repeated that he should knock it off or leave. Although the ex-husband continued ignoring mother's warnings, she failed to contact the police for assistance.

[¶ 7.] A temporary custody hearing was held on October 21, and the trial court signed an order granting DSS temporary custody of I.H. The order recited that, despite reasonable efforts to reunite the family, it was in I.H.'s best interest to be held in temporary custody and that it would be contrary to her welfare to remain in mother's home. A petition alleging

---

1. I.H.'s biological father has not been involved in her life since birth. The father voluntarily terminated his parental rights as part of the proceedings in this case and the termination of his rights is not at issue in this appeal.

2. DSS continued to provide visitation services to mother during those periods when she did not have actual physical custody of I.H.

abuse and neglect of I.H. was filed on October 28. During a hearing on November 7, mother admitted the allegations of the petition and the child was adjudicated to be abused and neglected. During the same hearing, mother's counsel acknowledged that it was her understanding that the State intended to ask for a termination of parental rights. Counsel further indicated that it was her position that mother was "in services right now." After the hearing, custody of I.H. was continued with DSS and the department was ordered to make reasonable efforts to make possible the return of the child. In its adjudicatory conclusions, the trial court wrote that "[r]easonable efforts were made to return the child but, despite such efforts, return of the child at [the] time would not be in [her] best interest."

[¶ 8.] On November 20, mother's counsel had a phone conversation with the DSS case-worker supervising I.H.'s case about increasing the frequency of mother's visitations. During that conversation, the case-worker informed counsel that it was not DSS's intention to make efforts to reunite the family and that the department intended to seek the termination of mother's parental rights. During a hearing on the visitation issue on December 3, mother's counsel again acknowledged her understanding that the State was asking for a termination of parental rights. When counsel observed that it was her belief that this did not constitute reasonable efforts toward reunification, the trial court responded that it would make that determination at the dispositional hearing. The court further indicated that, if it determined that reasonable efforts were not made, it would deny termination.

[¶ 9.] Actual disposition of the child was delayed because of problems I.H. was exhibiting in foster care. She was removed from her foster home on December 13 and placed at McKennan Hospital in Sioux Falls for stabilization of disruptive and defiant behavior that included suicidal comments, banging her head against the wall and the stabbing of a foster sister with a pencil. She was later diagnosed as a special needs child suffering a variety of emotional and psychological problems.

[¶ 10.] The dispositional hearing began on March 7, 2003 and continued on March 24. After the hearing, the trial court entered dispositional findings of fact, conclusions of law and an order terminating mother's parental rights. With regard to the services provided to mother, the trial court entered the following pertinent findings:

7. No reasonable efforts have been made to reunite and rehabilitate the family because the alleged father has had no contact with the minor child and the mother has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, the child has been removed from the mother's custody on two separate occasions, and the Department of Social Services offered or provided family services on each of the two separate occasions the child was removed.

8. The conditions which led to the removal of the child still exist, in that the mother has demonstrated a consistent pattern of inability to protect the child from harm. In this last situation, there was sexual contact by the step-father and mother did nothing to prevent contact. The mother has received extensive services, more than 10 hours weekly,

from the Department of Social Services and other local agencies. The alleged father has never had contact with the minor child.

9. There is little likelihood that these conditions will be remedied to allow the child to be returned to the custody of the child's mother.

10. Services to the family would be unavailing and contrary to the best interests of this child. Extensive services have been provided to this family and circumstances continue to arise where the child must be removed from the home.

The trial court also entered the following conclusion of law on the issue of the services provided to mother:

3. Reasonable efforts are not required because the mother has demonstrated an inability to protect the child from substantial harm pursuant to SDCL 26–8A–21.1(8).

[¶ 11.] Mother's counsel duly filed objections to the foregoing findings and conclusions and also proposed her own findings and conclusions on the services issue. From the order terminating her parental rights, mother appeals.

ISSUE

[¶ 12.] Did the trial court comply with the requirements of the Adoption and Safe Families Act in terminating Mother's parental rights?

■ [¶ 13.] The Adoption and Safe Families Act (ASFA), 42 USCA § 671 et seq., was recently reviewed by this Court in *People ex rel. D.B.*, 2003 SD 113, 670 N.W.2d 67. As explained in *D.B.*, the federal act:

establishes a child protection system that subordinates parental rights to the

paramount concern for the health and safety of the child when making a decision on whether it is in the child's best interests to preserve the family unit. ASFA is the congressional response to concerns that the preexisting law acted as a barrier to the adoption of abused and neglected children. *Under ASFA, the child protection system is not required to expend its limited resources attempting to reunify children with abusive parents if certain circumstances exist.* Thus, the act allows states to move toward termination of parental rights more efficiently under certain circumstances.

*D.B.*, 2003 SD 113 at ¶ 10, 670 N.W.2d at 70 (citations omitted)(emphasis added). Mother argues that ASFA procedural requirements were not met in her case and, therefore, the trial court erred in terminating her parental rights in the absence of direct efforts by DSS to return I.H. to her home and custody.

[¶ 14.] ASFA procedural requirements in South Dakota are primarily reflected in SDCL 26–8A–21; SDCL 26–8A–21.1 and SDCL 26–8A–21.2. SDCL 26–8A–21 requires reasonable efforts by DSS to reunify a child who has been removed from the home with the child's parent, guardian or custodian. *See Matter of C.W.*, 1997 SD 57, ¶ 17, 562 N.W.2d 903, 906 (SDCL 26–8A–21 requires that DSS make reasonable efforts to return a child to his parents); *People in Interest of S.A.H.*, 537 N.W.2d 1, 5 (S.D.1995)(SDCL 26–8A–21 requires that DSS exercise reasonable efforts to return children to their parents). However, as explained in *D.B., supra*, ASFA provides an exception to the reasonable efforts requirement in cases where the court determines that a parent has subjected a child to "aggravated circumstances" as defined

by state law. *See* 42 USCA § 671(a)(15)(D)(i). South Dakota's list of "aggravated circumstances" is contained in SDCL 26–8A–21.1. *See D.B., supra.* Subdivision (8) of the statute provides in pertinent part:

Nothing in § 26–8A–21 requires reunification of a child with a parent who:

* * *

(8) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, the child has been removed from the parent's custody on two separate occasions, and the Department of Social Services offered or provided family services on each of the two separate occasions the child was removed[.]

[¶ 15.] Here, the trial court specifically found after the dispositional hearing that:

No reasonable efforts have been made to reunite and rehabilitate the family because the alleged father has had no contact with the minor child and the mother has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, the child has been removed from the mother's custody on two separate occasions, and the Department of Social Services offered or provided family services on each of the two separate occasions the child was removed.

This finding was obviously entered to excuse DSS's compliance with the reasonable efforts requirement pursuant to SDCL 26–8A–21.1(8) and the finding is supported by the record as set forth under the facts. Nevertheless, mother contends the finding is inadequate from a procedural standpoint because it was not entered after a separately noticed hearing on the issue of reasonable efforts and as a predicate to another hearing on a permanency plan for I.H. pursuant to SDCL 26–8A–21.2:

If the court has determined that reasonable efforts to return an adjudicated abused or neglected child to the home of the parent, guardian, or custodian are not appropriate, a permanency hearing shall be held within thirty days after the determination. At the permanency hearing, the court shall determine whether and, if applicable, when:

(1) The child should be placed for adoption, and the state should file a petition for termination of parental rights;

(2) The child should be referred for legal guardianship;

(3) The child should be placed permanently with a fit and willing relative; or

(4) A compelling reason is documented with the court that none of the permanent plans listed in this section would be in the best interest of the child, and the child should be placed in another planned permanent living arrangement.

[¶ 16.] Indeed, the preferable course to follow in this case would have been for the State or DSS to seek a separate hearing shortly after I.H.'s removal and early in the termination process on the issue of the necessity of reasonable efforts. Following that hearing and entry of a finding of an aggravated circumstance under SDCL 26–8A–21.1, a permanency hearing could have been held within thirty days pursuant to SDCL 26–8A–21.2. At that hearing, DSS could have presented its plan for the final disposition of I.H. and the final disposition-

al hearing could have followed a short time later. Such procedures would have comported with the ASFA goal of moving toward termination of parental rights more efficiently in cases where aggravating circumstances are present. *See D.B.*, 2003 SD 113 at ¶ 10, 670 N.W.2d at 70. *See also, New Jersey Div. v. A.R.G.*, 361 N.J.Super. 46, 824 A.2d 213, 234 (N.J.Super.Ct.App.Div.2003)(ASFA gives courts the discretion to identify the most egregious cases at the early stages of child protection proceedings without providing fruitless reunification services).

[¶ 17.] A good example of the foregoing process is provided in *A.R.G., supra*, a case relied upon by this Court in *D.B., supra*. In *A.R.G.*, New Jersey's family services agency effected an emergency removal of three children from their father's care. The removal took place on May 28, 2002. The next day, the agency filed a child abuse and neglect complaint against the father. On the application of the agency, the trial court also issued an order directing the father to show cause at a hearing on June 26, why custody of the children should not be continued with the agency. Two days before the show cause hearing, counsel for the agency issued a letter to all counsel advising that it would submit evidence and seek a finding at the hearing that no reasonable efforts to reunify the family were required. At the hearing, the agency moved for a finding that it was not required to exert reasonable efforts to reunify the family based upon the presence of certain aggravating circumstances in the case. After considering the testimony, evidence, and arguments of counsel, the trial court ruled that the agency had clearly established the presence of aggravating circumstances. The court also scheduled a permanency planning hearing for July 17 (a time within

thirty days of its determination of aggravating circumstances). At the permanency hearing, the agency presented its plan to terminate the father's parental rights and to place the children for adoption by their maternal grandparents. The trial court approved the plan and issued an order directing the agency to file a guardianship complaint for termination of the father's parental rights within thirty days. Proceedings to terminate parental rights (*i.e.*, proceedings similar to a dispositional hearing) followed.

[¶ 18.] The two month span from removal of the children to approval of the permanency plan in *A.R.G.* contrasts with the five months between removal and disposition in the present case. Obviously the *A.R.G.* procedures were more consistent with the ASFA goal of efficient movement to termination in cases involving aggravating circumstances. *D.B., supra*. This does not, however, equate with a finding of reversible error here.

[¶ 19.] In a process more similar to what occurred in this case, the New York Court of Appeals, in *In Re Marino S.*, 100 N.Y.2d 361, 763 N.Y.S.2d 796, 795 N.E.2d 21 (2003), approved a trial court order excusing a family service agency's failure to exercise reasonable efforts toward reunification of the family. In *Marino*, one of the three children at issue was raped by her father and the children were placed in foster care. Child abuse proceedings against the parents were instituted and, after a finding of abuse, proceedings to terminate parental rights were commenced. During the pendency of the abuse and termination proceedings, ASFA took effect in New York. Shortly thereafter, a motion was brought for a finding of aggravated circumstances dispensing with the requirement that the family services

agency exercise reasonable efforts toward reunification. A hearing was held and the parents were given a full opportunity to present evidence in support of their contention that diligent efforts to reunite them with their children should be required. After the hearing, the trial court found that the children were severely abused, that reasonable efforts at reunification were not required and terminated the mother and father's parental rights. The parents appealed. With regard to the argument that the trial court could not excuse the family service agency's failure to exercise reasonable efforts retrospectively, the New York Court held:

> Such a construction of the statute would be at odds with the remedial nature of ASFA. Even before the enactment of ASFA, a court could, in the context of a finding of severe abuse, excuse an agency from showing that it had exercised diligent efforts when such efforts would be detrimental to the best interest of the child. Indeed, in this case [trial] court, in addition to finding ... that diligent efforts were not required, also made a finding—pursuant to the pre-ASFA portion of Social Services Law § 384–b(8)(a)—that such efforts would have been detrimental to the best interests of the children. As the Appellate Division noted, "[i]t would be an absurd result to require reasonable efforts until a judicial determination is made when the [statute] itself recognizes that there are situations where reasonable efforts may actually be harmful to the child".

*Marino,* 763 N.Y.S.2d 796, 795 N.E.2d at 28 (some citations omitted).

■ [¶ 20.] The history of South Dakota law on this topic is similar to that in New York. It has been a long-standing rule in this state that services are not mandated in every case and that, in compelling circumstances, parental rights may be terminated without delay where it is in the best interests of the child. *See e.g., Matter of S.T.B.,* 499 N.W.2d 903, 905 (S.D.1993). *See also People in Interest of T.G.,* 1998 SD 54, ¶ 21, 578 N.W.2d 921, 924 (although fundamental nature of parental rights mandates reasonable effort to aid them in maintaining their offspring, best interests of the child must always prevail and the exhaustion of every form of assistance is not required). It would be ironic if ASFA, intended to make the termination process more efficient in cases involving compelling or aggravated circumstances, was actually permitted to be used as a tool for extending the process and compelling the provision of services that would clearly be fruitless and contrary to the best interests of the child.

[¶ 21.] The record of services provided to mother over a period of years in this case is overwhelming.[3] Even after DSS ceased its provision of direct services to mother, community based resources offered her extensive assistance aimed at stabilizing her life and giving her the chance to retain custody of I.H. The extended termination process that was followed in this case also inured to mother's benefit, affording her the opportunity to

---

**3.** Services included visitation, individual counseling for mother and I.H., medication management for the two of them, individual education plans for I.H., protective payee services, housing assistance, TANIF, food stamps, childcare assistance, home-based services through the Bradfield Leary Center and Center for Independence, parenting instruction, educational assistance to obtain a GED, employment assistance, instruction on independent living skills, instruction on eliminating risks to I.H. posed by third parties, sobriety counseling, weekly team meetings, and psychological testing and treatment.

obtain further assistance from these community based resources and the opportunity to improve her parenting skills to a degree establishing her capacity to care for the special needs of her child. Instead, by the time of the dispositional hearing, mother was actually refusing the community based services, had fallen into and out of unhealthy relationships with three other men, was again abusing alcohol and was about to lose her home and move to Sioux Falls. Even at the dispositional hearing, mother failed to offer proof of any additional services that could have been provided that would have raised any likelihood of change in the outcome of this matter. Based upon this record, the trial court did not commit procedural error in its retrospective determination of the existence of aggravating circumstances sufficient to excuse DSS from the obligation to make reasonable efforts to reunify mother and I.H.

[¶ 22.] Affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.