2004 SD 126

**In the Interest of L.N., Alleged Abused/Neglected Child and Concerning P.W., Respondent Mother.**

No. 23106.

Supreme Court of South Dakota.

Argued on Aug. 24, 2004.

Decided Nov. 23, 2004.

**894**

Jeff Larson, Minnehaha County Public Defender's Office, Sioux Falls, South Dakota, Attorneys for appellant Mother, P.W.

Lawrence E. Long, Attorney General, Ann M. Holzhauser, Assistant Attorney General Pierre, South Dakota, Attorneys for appellee State.

ZINTER, Justice.

[¶ 1.] L.N. was found to be abused and neglected at an adjudicatory hearing. At a subsequent "no reasonable efforts hearing," the court found that aggravating circumstances were present and that reasonable efforts to reunify the family were not required under the South Dakota provisions of the Adoption and Safe Families Act (ASFA). Final disposition occurred at a "permanency hearing" in which the trial court concluded that parental rights should be terminated and L.N. should be placed for adoption. Mother[1] appeals claiming that this procedure unconstitutionally deprived her of the right to a "dispositional hearing" and the opportunity to consider less restrictive alternatives that were in the best interests of the child. We disagree and affirm the trial court.

### Facts and Procedural History

[¶ 2.] L.N., a minor child with Fetal Alcohol Syndrome, was born on May 15, 2003. On June 11, 2003, he was placed in protective custody because of Mother's alcohol abuse. That same day, an abuse and neglect petition was filed. Despite L.N.'s placement in protective custody, both parents were observed under the influence of alcohol by the Department of Social Services (DSS) during these proceedings. Furthermore, on June 16, 2003, Mother pleaded guilty to her fourth DUI and was sentenced to two years in the South Dakota Women's Prison on July 16, 2003.

[¶ 3.] On August 22, 2003, L.N. was adjudicated abused and neglected because of Mother's chronic alcoholism and the child's prenatal exposure to alcohol. That adjudication has not been appealed.

---

1. Father has not appealed.

[¶ 4.] On August 25, 2003, DSS filed a motion to be relieved of the requirement that it provide reasonable efforts to reunite L.N. with his parents. *See* SDCL 26–8A–21 (requiring reasonable efforts to return the child to the home) and 26–8A–21.1 (relieving DSS of that requirement when certain aggravating circumstances are found). A "no reasonable efforts hearing" was conducted on that motion on September 9, 2003. Mother called no witnesses and introduced no evidence. The trial court found that aggravating circumstances existed. It concluded that DSS was not required to provide reasonable efforts to reunify Mother and L.N. This bypass decision was authorized by two provisions of ASFA, which are codified in SDCL 26–8A–21.1.

[¶ 5.] The first aggravated circumstance was a finding that Mother's parental rights had been previously terminated to three other children[2] and Father's rights had been terminated to one other child (*see* SDCL 26–8A–21.1(5)). The second aggravating circumstance was that Mother had a documented history of abuse and neglect as a result of chronic alcohol abuse (*see* SDCL 26–8A–21.1(6)).

[¶ 6.] Mother's history reflects that she has been addicted to alcohol for twenty years and has been unable to maintain sobriety. DSS's involvement with Mother's abuse and neglect because of alcohol started in December, 1993. Mother had been offered services by DSS several times, but failed to cooperate or complete those services. Mother admitted that she had this long-standing problem and that she had been admitted for treatment eight times at private and public facilities.

Since being released from chemical dependency treatment in this case, Mother had not followed through with any of the aftercare that was necessary to maintain sobriety. The psychologist who evaluated Mother concluded that her alcohol problem was a significant impediment to her ever being an adequate parent.

[¶ 7.] With respect to Father, the trial court found that he would not separate from Mother, and his concern for Mother took priority over the best interests of his children. The trial court specifically found that Father had no interest in acting as L.N.'s primary caretaker and had shown a lack of interest and involvement with L.N.

[¶ 8.] On November 17, 2003, following the court's bypass decision, a "permanency hearing" was held pursuant to SDCL 26–8A–21.2. At the conclusion of that hearing the trial court entered a conclusion of law, based upon clear and convincing evidence, that the best interests of the child would be served by the termination of parental rights and the placement of the child for adoption. Significant to the issues in this appeal, the trial court specifically concluded that the least restrictive alternative compatible with the "best interests and welfare of [L.N.] ... require[d] termination of all parental rights." The court ordered DSS to file a petition for termination of parental rights and place L.N. for adoption.

[¶ 9.] No further "dispositional" hearings were held because the trial court had already disposed of the case by concluding that reunification efforts were not required, that termination of parental rights

---

2. The other terminations occurred in 1998 and 2002. All three prior terminations were caused by Mother's chronic and severe alcoholism. Mother drank during one of her prior pregnancies and was intoxicated at the child's birth. Mother also failed to cooperate with or complete services offered by DSS in the prior terminations. In the 1998 proceedings, the trial court found that there was little likelihood of change. Unfortunately, this finding turned out to be prophetic.

was the least restrictive alternative that was in the best interests of the child, and that the child should be placed for adoption. Consequently, the trial court's conclusions of law specifically stated that they were entered "for disposition" of this case. The trial court observed that "it is well within the power of the state legislature to say the well-being of [a child] trumps the mother's rights to have a [further] dispositional hearing[,]" and a further dispositional hearing would be meaningless in this case.

[¶ 10.] At the beginning of both the adjudicatory and the no reasonable efforts hearings, Mother objected to the presence of the foster parents and certain DSS employees. The objections were overruled, and both the foster parents and a DSS supervisor were allowed to remain in the courtroom during the adjudicatory hearing. The foster parents and one employee of DSS were allowed to be present at the no reasonable efforts hearing.

[¶ 11.] Mother appeals, raising the following issues:

1. Whether SDCL 26–8A–21.1 and 21.2 unconstitutionally denied Mother the right to a dispositional hearing and the opportunity to determine wheth-

er termination was the least restrictive alternative consistent with the best interests of the child.

2. Whether allowing foster parents and DSS employees to be present during a closed juvenile hearing requires a reversal of the termination of Mother's parental rights.

## Analysis and Decision

### Opportunity to Litigate Whether Termination Was the Least Restrictive Alternative

[¶ 12.] The Adoption and Safe Families Act, 42 USCA § 671 et seq., provides that "the child protection system is not required to expend its limited resources attempting to reunify children with abusive parents if certain [aggravating] circumstances exist." *People ex rel. D.B.*, 2003 SD 113, ¶ 10, 670 N.W.2d 67, 70 (citation omitted). ASFA's procedural requirements are codified in SDCL 26–8A–21 (reasonable efforts required), 26–8A–21.1 (exceptions to reasonable efforts), and 26–8A–21.2 (permanency hearing required). *In re I.H.*, 2004 SD 7, ¶ 14, 674 N.W.2d 809, 812. More specifically, SDCL 26–8A–21 [3] requires that DSS make rea-

---

3. SDCL 26–8A–21 provides:

The Department of Social Services shall make reasonable efforts prior to the removal of an alleged or adjudicated abused or neglected child from the home of the child's parents, guardian, or custodian to prevent or eliminate the need for removal of the child. If the child has been removed from the home and has been placed in temporary custody of the department, the department shall make reasonable efforts to make it possible for the child to return to the home of the child's parents, guardian, or custodian. If the child is to be or has been removed from the home, the court shall first make a judicial determination that removal of the child from the home is or was necessary because continued presence of the child in the home would be contrary to the

welfare of the child and that reasonable efforts by the department to avoid removal of the child from the home have been made. If the child has been removed from the home and has not been returned to the home, the court shall first make a judicial determination that reasonable efforts have been made by the department to return the child to the home and that the child cannot be returned to the home because it would be contrary to the welfare of the child. Reasonable efforts to prevent the necessity for removal of a child from the home of the child's parents, guardian, or custodian and reasonable efforts to return the child to the home mean provision by the department of any assistance or services that:

(1) Are appropriate for the child's parents, guardian, custodian, or any other caretaker

sonable efforts to reunify a child who has been removed from the home of the child's parent, guardian, or custodian. *Id.* (citing Matter of C.W., 1997 SD 57, ¶ 17, 562 N.W.2d 903, 906). However, ASFA provides exceptions to these reasonable efforts requirements where the court determines that a parent has subjected a child to "aggravated circumstances," which are defined in SDCL 26–8A–21.1.[4] *D.B.*, 2003 SD 113, ¶ 10, 670 N.W.2d at 70.

[¶ 13.] Mother argues that these statutes deny her due process because they deprived her of the opportunity to litigate less restrictive alternatives. This argument is entirely premised on Mother's contention that the statutes provide courts with *no discretion* to require reunification and to consider other alternatives when an aggravating circumstance is present. However, we have previously concluded otherwise, stating that "the reasonable ef-

family of the child existing at the time of removal or possible return of the child, including instruction on parenting;

(2) Are available pursuant to the comprehensive plan of preventive services of the department;

(3) Could be made available without undue financial burden on the department; or

(4) Would have a significant likelihood of protecting the child from substantial danger to the child's physical health or from severe emotional damage while enabling the child to remain in the home or to be returned to the home.

In determining the adequacy of reasonable efforts, the court shall consider the assistance, services, and efforts of the department. The court shall also consider the good faith efforts or the lack of good faith efforts made by the child's parents, guardian, custodian, or other caretaker family to cooperate with the department and to effectively utilize the assistance or services for the benefit and welfare of the child.

4. SDCL 26–8A–21.1 provides:

Nothing in § 26–8A–21 requires reunification of a child with a parent who:

(1) Committed a crime defined in § 22–16–4, 22–16–7, 22–16–9, 22–16–15, 22–16–20, 22–22–1, 22–22–19.1, 22–22–22, 26–10–1, or subdivision 22–19–1(5), or committed conduct described by any of those statutes that violated the law or ordinance of another jurisdiction having elements similar to an offense described by any of those statutes;

(2) Committed a crime defined in § 22–18–1.1 against the child or another child of such parent, or committed conduct described by that section that violated the law or ordinance of another jurisdiction having elements similar to the offense described by that section;

(3) Has been determined by a court by clear and convincing evidence to have subjected the child or another child to torture, sexual abuse, abandonment for at least six months, chronic physical, mental, or emotional injury, or chronic neglect if the neglect was a serious threat to the safety of the child or another child;

(4) Is incarcerated and is unavailable to care for the child during a significant period of the child's minority, considering the child's age and the child's need for care by an adult;

(5) Has had parental rights to another child involuntarily terminated by a prior legal proceeding;

(6) Has a documented history of abuse and neglect associated with chronic alcohol or drug abuse;

(7) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, and the child or another child has been removed from the parent's custody because the removed child was adjudicated abused and neglected by a court on at least one previous occasion;

(8) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or the risk of substantial harm, the child has been removed from the parent's custody on two separate occasions, and the Department of Social Services offered or provided family services on each of the two separate occasions the child was removed;

or

(9) Has exposed the child to or demonstrated an inability to protect the child from substantial harm or risk of harm resulting from a crime, act, or omission as specified in subdivision (1), (2), or (3) of this section.

forts bypass provision found in SDCL 26–8A–21.1 provides the trial court with *discretion* to identify the most egregious cases early in the process and dispense with futile efforts toward reunification." *Id.* ¶ 15 (emphasis added). *See also New Jersey Div. of Youth and Family Services v. A.R.G.*, 361 N.J.Super. 46, 77–78, 824 A.2d 213, 234 (N.J.Super.Ct.App.Div.2003) (stating that ASFA gives courts the *discretion* to identify the most egregious cases at the early stages of child protection proceedings without providing fruitless reunification services) (emphasis added). Thus, we reject Mother's argument that the bypass procedure deprives a court of discretion to consider less restrictive alternatives consistent with the best interests of the child.

[¶ 14.] In fact, we conclude that a court must necessarily consider whether a less restrictive alternative is appropriate in making the bypass decision. After all, SDCL 26–8A–21.1 does not preclude reunification efforts when aggravating circumstances are present. Rather, the statute simply provides that if aggravating circumstances are present, reunification efforts are not *required:* "Nothing in § 26–8A–21 *requires* reunification of a child with a

parent who ..." meets one of the exceptions. SDCL 26–8A–21.1 (emphasis added).

[¶ 15.] A consideration of reasonable alternatives is also contemplated because SDCL 26–8A–21.2 only permits a permanent out of home placement "[i]f the court *has determined* that reasonable efforts ... are *not appropriate* ..."(emphasis added). This language clearly states that even if DSS had identified an aggravating circumstance, the court[5] must still have determined whether reasonable efforts were "appropriate," and obviously, the appropriateness of reunification requires a consideration of alternatives. Because we construe the statutes to require these considerations in making the bypass and permanency decisions, we reject Mother's contention that this procedure deprived her of the opportunity to litigate whether other less restrictive alternatives were appropriate in the best interests of the child.

*Right to a Separate Dispositional Hearing*

[¶ 16.] SDCL 26–8A–21.2[6] provides that *if* the court has determined that reasonable efforts to return the child are not appropriate, a permanency hearing shall be held within 30 days. *See also,*

---

5. Because *the court* maintains the discretion to make the bypass decision, we reject Mother's argument that *DSS possesses* the ultimate discretion to require a bypass by merely identifying an aggravating circumstance. Because DSS does not possess that discretion, Mother's constitutional argument under *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168, 92 S.Ct. 839, 846, 31 L.Ed.2d 110, 119 (1972) is without merit (holding void for vagueness may occur when a statute places almost unfettered discretion in the hands of the police).

6. SDCL 26–8A–21.2 provides:
   If the court has determined that reasonable efforts to return an adjudicated abused or neglected child to the home of the parent, guardian, or custodian are not appropriate,

a permanency hearing shall be held within thirty days after the determination. At the permanency hearing, the court shall determine whether and, if applicable, when:
(1) The child should be placed for adoption, and the state should file a petition for termination of parental rights;
(2) The child should be referred for legal guardianship;
(3) The child should be placed permanently with a fit and willing relative;
or
(4) A compelling reason is documented with the court that none of the permanent plans listed in this section would be in the best interest of the child, and the child should be placed in another planned permanent living arrangement.

*I.H.*, 2004 SD 7, ¶ 16, 674 N.W.2d at 813. Although there is no dispute that the permanency hearing was held and the court made a dispositional decision to terminate parental rights at that hearing, Mother contends that she was entitled to yet another "dispositional hearing."

[¶ 17.] Counsel for DSS concedes that the "preferable course" is to have a no reasonable efforts hearing, followed by a permanency hearing under SDCL 26–8A–21.1, followed by a final dispositional hearing. *See I.H.*, 2004 SD 7, ¶ 16, 674 N.W.2d at 813. However, this suggested procedure is not mandatory if the reasonableness of reunification and the appropriateness of alternatives have already been determined adversely to the parents in properly noticed hearings. A further dispositional hearing in such cases would only delay a permanent placement, a result sought to be eliminated by ASFA.

[¶ 18.] A further dispositional hearing was also not necessary to provide Mother with the opportunity to litigate reasonable alternatives in the best interests of the child because it is the nature of the hearings provided, not the name, that is important.[7] In this case, the opportunity to litigate all dispositional issues was provided at the no reasonable efforts and permanency hearings. They therefore became the dispositional phase of this case.

[¶ 19.] Moreover, Mother cannot claim surprise. She was on notice that the court would determine whether reasonable efforts to reunify were appropriate at the no reasonable efforts hearing. She was also on notice that the court was required to "determine whether and, if applicable, when: the child should be placed for adoption, and [if] the state should file a petition for termination of parental rights ..." at the permanency hearing. *See* SDCL 26–8A–21.2(1). Thus, Mother was on notice that a termination disposition was a potential outcome of these hearings.

[¶ 20.] Finally, we see nothing in the statutory framework that prohibits the no efforts hearing and the permanency hearing from being considered the disposition. SDCL chs 26–7A and 26–8A contemplate a number of ways in which disposition of an abused and neglected child may occur. They do not, however, provide a right to any particular form of dispositional hearing. Rather, SDCL 26–7A–87 merely provides that, after adjudication, "the court shall proceed with the dispositional *phase* of the proceedings ..." (emphasis added).

[¶ 21.] During that dispositional *phase*, trial courts have a number of dispositional options. First, if it is determined that reasonable efforts to return the child are not appropriate, a permanency hearing must be held to determine if a permanent out of home placement should be made. SDCL 26–8A–21.2. If a permanent out of home placement is appropriate, options include permanent placement for adoption or guardianship, permanent placement with a relative, or other planned permanent living arrangement. *Id.* On the other hand, if a permanent out of home placement is not appropriate, and if termination of parental rights is not warranted, further hearings may be necessary to consider other dispositions such as placement in the temporary custody of the parents, guardian, relative, or other suitable party or agency, including foster care. SDCL 26–8A–22. Additional dispositions include return of custody to the parents with or without supervision, custodial supervision by DSS or a child placement agency, or

---

7. Even if this form over substance argument had merit and we were to focus on form, the trial court's dispositional document was entitled "Findings of Fact and Conclusions of Law *for Disposition.*" (Emphasis added.)

another planned permanent living arrangement. *Id.*

[¶ 22.] All of these options are "dispositions." The no reasonable efforts and permanency hearings merely constitute one combination of authorized disposition. Therefore, if a termination of parental rights and a permanent out of home placement were determined to be appropriate under SDCL 26–8A–21.2, the "disposition" occurred, and a separate dispositional hearing was unnecessary. As the trial court correctly observed, a further dispositional hearing was not necessary because a permanent out of home placement had already been made pursuant to SDCL 26–8A–21.2.

[¶ 23.] Mother, however, also points out that all four options under SDCL 26–8A–21.2 involve a permanent out of home placement. Thus, Mother contends there was no real opportunity to present less restrictive alternatives at the permanency hearing.

[¶ 24.] Due process requires a meaningful opportunity to be heard. *State v. I–90 Truck Haven Service, Inc.,* 2003 SD 51, 15, 662 N.W.2d 288, 292. However, the sufficiency of the "opportunity required is flexible and requires only such procedural protections as the particular situation demands." *Matter of Estate of Washburn,* 1998 SD 11, 19, 575 N.W.2d 245, 250 (citations omitted). Here, Mother was afforded due process because, as we previously noted, the court's permanency decision under SDCL 26–8A–21.2 necessarily required consideration of less restrictive alternatives and the best interests of the child. After all, in the context of child proceedings, "at every stage, from initial appearance to final disposition, [a courts] brightest beacon is the best interests of the child." *Matter of C.V.,* 1998 SD 47, 11, 579 N.W.2d 17, 21 (citing *Matter of R.P.,* 498 N.W.2d 364, 366 (S.D.1993)).

[¶ 25.] In this case, Mother was present at the no efforts and permanency hearings, and she was legally on notice that the State could seek a termination of parental rights and placement of the child for adoption. Furthermore, reasonable alternatives in the best interests of the child were required to be considered in those proceedings. Therefore, the due process opportunity to be heard on less restrictive alternatives was afforded.

*The Presence of Foster Parents and the Department of Social Services In a Closed Juvenile Hearing*

[¶ 26.] The controlling statute provides that juvenile hearings are closed unless the court finds compelling reasons to open them. SDCL 26–7A–36.[8] The party wanting the hearing opened has the burden of proving that "compelling reasons" exist to require opening the proceedings. *In the Matter of M.C.,* 527 N.W.2d 290, 292 (S.D.1995); SDCL 26–7A–36. "The purpose behind closed juvenile proceedings is to 'protectively rehabilitate juveniles' . . ., [and] 'the maintenance of confidentiality is a necessary corollary of that purpose.'" *Id.* at 293 (citing *San Bernardino County Dep't of Public Social Services v. Superior Court,* 232 Cal.App.3d 188, 283 Cal.Rptr. 332, 339 (1991)). The trial court's decision on this issue is re-

---

8. SDCL 26–7A–36 provides:

All hearings in actions under this chapter and chapter 26–8A, 26–8B, or 26–8C are closed unless the court finds compelling reasons to require otherwise. However, all pleadings and hearings shall be open and a matter of public record if a juvenile is summoned into court for an offense which if committed by an adult would constitute a crime of violence as defined in subdivision 22–1–2(9) or a crime involving a drug offense in violation of 22–42–2 or 22–42–3, and at the time of the offense the juvenile was sixteen years of age or older.

viewed under the abuse of discretion standard. *Id.* at 291.

[¶ 27.] Here, the foster parents and certain DSS employees were allowed to be present at the hearings despite Mother's objection. Mother argues that compelling circumstances are required before *any* individual other than a party may be present at such a hearing. However, considering the purpose of SDCL 26–7A–36, these hearings are only closed to the general public. The general rule of closure was not intended to require a showing of compelling circumstances before those individuals who possess a legitimate interest in the juvenile may attend the proceeding.

[¶ 28.] We also see no prejudice. As this Court stated in *In re* A.D., "the question is not 'Was there error?' but 'Was there prejudicial error?'" 416 N.W.2d 264, 266 (S.D.1987). Thus, we stated that allowing a non-party to appear through counsel at a dispositional hearing was not prejudicial error. *Id.*

[¶ 29.] Affirmed.

[¶ 30.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, and WILBUR, Circuit Judge, concur.

[¶ 31.] WILBUR, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.